UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | |
| | : | |
| JOSE LUIS SEVERINO-CONCEPCION | : | VIOLATIONS: |
| | : | |
| | : | 21 U.S.C. § 963 |
| | : | (Conspiracy To Import MDMA and to |
| | : | Distribute MDMA Intending and Knowing |
| | : | that the MDMA Would be Unlawfully |
| | : | Imported into the United States) |
| | : | |
| | : | 21 U.S.C. § 959(a) |
| | : | (Distributing MDMA Knowing that the |
| | : | MDMA Will Be Unlawfully Imported into |
| | : | the United States) |
| | : | |
| | : | 18 U.S.C. §2 |
| | : | (Aiding and Abetting) |

## I N F O R M A T I O N

The United States charges that:

### COUNT ONE

### The Conspiracy

1. From in or about and between January 2000 through October 23, 2003, in the Dominican Republic, the Netherlands, and elsewhere, **JOSE LUIS SEVERINO-CONCEPCION,** together with co-conspirators referred to herein as **BJC**, **John Doe** and **JSR**, together with others known and unknown to the government, did knowingly and knowingly and intentionally combine, conspire, confederate and agree to (1) import into the United States from a place outside thereof a mixture and substance containing a detectable amount of 3,4- Methylenedioxymethamphetamine (hereafter "MDMA"), a Schedule I controlled substance, in violation of Title 21, United States

Code, Sections 952 and 960, and (2) manufacture and distribute a mixture and substance containing a detectable amount of MDMA , a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

### Roles of the Defendants

2. **BJC** was the leader of an MDMA organization that recruited residents of the Dominican Republic to act as couriers who would transport MDMA from Europe to the United States.

3. **John Doe, a/k/a M**, was responsible for assisting the couriers once they were in the Netherlands to obtain MDMA and then smuggle the MDMA into the United States.

4. **JSR** was a recruiter of couriers based in the Dominican Republic.

5. **JOSE LUIS SEVERINO-CONCEPCION** was a recruiter of couriers based in the Dominican Republic.

### Object of the Conspiracy

6. It was the object of the conspiracy to recruit couriers in the Dominican Republic to travel to the Netherlands to acquire MDMA and then transport MDMA from the Netherlands via other European cities into the United States.

### Manner and Means of the Conspiracy

7. The defendants and other co-conspirators, both known and unknown to the government, used the following manner and means to accomplish the goals of the conspiracy:

    A. Members of the organization recruited couriers, purchased airline tickets for them, provided information to them to facilitate their contact with co-conspirators in the Netherlands, provided expense money to the couriers, and paid courier recruiters a fee for their recruits.

    B. Members of the organization in the Netherlands supplied the couriers with suitcases and other containers containing MDMA and then caused the couriers to travel to the United States to deliver the MDMA.

## Overt Acts

8. In furtherance of the conspiracy and in order to effect the objects thereof, the defendants **BJC**, **John Doe**, a/k/a M, **JSR** and **JOSE LUIS SEVERINO-CONCEPCION** and others who are known and unknown to the government within the United States, the Netherlands and elsewhere, committed one or more of the following overt acts:

    A.  In or about January or February 2002, the defendant **BJC** recruited three German citizens (hereinafter referred to collectively as the 'First Group' and individually as couriers RG, RJ, and VW) in the Dominican Republic to travel to the Netherlands and thereafter transport MDMA from the Netherlands to the United States.

    B.  In or about January or February 2002, the defendant **BJC** provided the First Group with airline tickets to fly from the Dominican Republic to the Netherlands.

    C.  On or about February 4, 2002, **JOHN DOE**, a/k/a M, met the First Group in the Netherlands, where **JOHN DOE**, a/k/a M, provided them with places to live, money for food and clothing, and arranged for their travel from the Netherlands, via other European cities, to the United States.

    D.  On or about February 9, 2002, **JOHN DOE**, a/k/a M, provided or caused others to provide luggage containing MDMA to couriers RG, RJ and VW.

E. On or about February 9, 2002, courier RG arrived in Orlando, Florida, after traveling from New York, New York, and Frankfurt, Germany, in possession of luggage containing an unknown quantity of MDMA.

F. On or about February 9, 2002, courier RJ arrived in Miami, Florida, after traveling from Zurich, Switzerland, and Duesseldorf, Germany, where she/he abandoned the luggage that **JOHN DOE**, a/k/a M, had given to her/him in Amsterdam.

G. On or about February 9, 2002, courier VW possessed a piece of luggage containing approximately 20,000 tablets of MDMA in Duesseldorf, Germany.

H. In or about February or March 2002, the defendant **BJC** recruited three couriers (hereinafter referred to collectively as the 'Second Group,' and individually as couriers BB, AB, and LL) in the Dominican Republic to travel to the Netherlands and thereafter to transport MDMA from the Netherlands to the United States.

I. In or about March 2002, the defendant **BJC** provided the couriers or caused others to provide the couriers with airline tickets to fly from the Dominican Republic to the Netherlands.

J. In or about March 2002, **JOHN DOE**, a/k/a M, met couriers BB, AB and LL in the Netherlands and caused them to be provided with places to live, money for food and clothing, and arranged for their travel from the Netherlands, via other European cities, to the United States.

K. Between about March 3 and March 9, 2002, **JOHN DOE**, a/k/a M, provided or caused to be provided luggage or apparel containing MDMA to couriers BB, AB and LL.

L. On or about March 3, 2002, courier BB arrived in New York, New York, after traveling from Frankfurt, Germany, in possession of luggage containing approximately three kilograms of MDMA.

4

M. On or about March 6, 2002, courier AB arrived in Miami, Florida after traveling from Frankfurt, Germany, wearing cycling shorts and two vests in which were secreted MDMA tablets.

N. On or about March 8, 2002, courier LL arrived in New York, New York after traveling from Berlin, Germany, in possession of luggage containing approximately 13.7 kilograms of MDMA.

O. In or about April 2002, **JOSE LUIS SEVERINO-CONCEPCION** recruited courier MF in the Dominican Republic to transport MDMA from the Netherlands to the United States.

P. In or about April 2002, **SEVERINO** introduced courier MF to **BJC**, who arranged for MF to travel from the Dominican Republic to the Netherlands.

Q. On or about April 11, 2002, **JOHN DOE**, a/k/a M, met MF in Amsterdam, the Netherlands, and caused the courier to be provided with shelter and money for food. In addition, **JOHN DOE**, a/k/a M, caused MF to receive MDMA secreted in a dartboard in the Netherlands and thereafter arranged for MF to travel from Amsterdam via Frankfurt, Germany to the United States with the MDMA.

R. On or about may 3, 2002, courier MF arrived in Boston, Massachusetts, after traveling from Frankfurt, Germany in possession of a dartboard containing approximately 2.2 kilograms of MDMA.

S. In or about May 2002, **JSR**, arranged for two European nationals, couriers MD and DB, to travel from the Dominican Republic to the Netherlands.

T. In or about May 2002, **JSR**, made arrangements for couriers MD and DB to stay in hotels in Amsterdam, the Netherlands and provided them with money for food.

U. On or about May 31, 2002, **JSR**, provided courier MD with a piece of luggage containing MDMA.

V. On or about May 31, 2002, courier MD attempted to board a flight from Brussels, Belgium to the United States in possession of a piece of luggage containing approximately 25,000 MDMA tablets.

W. On or about June 9, 2002, **JSR**, provided courier DB with a piece of luggage containing MDMA.

X. On or about June 9, 2002, courier DB attempted to board a flight from Frankfurt, Germany to the United States in possession of a piece of luggage containing approximately 25,000 MDMA tablets.

Y. In or about June or July, 2002, **JOSE LUIS SEVERINO-CONCEPCION** recruited courier KR, a German citizen, in the Dominican Republic to transport MDMA from the Netherlands to the United States.

Z. In or about June or July, 2002, **SEVERINO** introduced courier KR to **BJC**, who arranged for courier KR to travel from the Dominican Republic to the Netherlands.

AA. On or about July 21, 2002, **JOHN DOE**, a/k/a M, met courier KR in the Netherlands and made arrangements for courier KR to stay in an apartment and to receive money for food.

BB. On or about July 21, 2002, **JOHN DOE**, a/k/a M, caused courier KR to be taken to Brussels where courier KR flew to Miami, Florida.

CC. On or about July 28, 2002, **JOHN DOE**, a/k/a M, provided courier KR with a piece of luggage containing MDMA.

6

DD. On or about July 28, 2002, courier KR arrived in Miami, Florida, after traveling from Brussels, Belgium, in possession of a piece of luggage containing approximately 8.7 kilograms of MDMA.

All in violation of Title 21, United States Code, Sections 963 and 960, and Title 18, United States Code, Section 2.

## COUNT TWO

9. In or about, and between, January 1, 2002, and February 9, 2002, in the Dominican Republic, the Netherlands and elsewhere, the defendants **BJC** and **JOHN DOE**, a/k/a M, did unlawfully, knowingly, and intentionally distribute and cause the distribution of a mixture or substance containing a detectable amount of 3,4- Methylenedioxymethamphetamine, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

Title 21, United States Code, Section 959; Title 18, United States Code, Sections 2.

## COUNT THREE

10. In or about, and between, February 1, 2002, and March 9, 2002, in the Dominican Republic, the Netherlands and elsewhere, the defendants **BJC** and **JOHN DOE**, a/k/a M, did unlawfully, knowingly, and intentionally distribute and cause the distribution of a mixture or substance containing a detectable amount of 3,4- Methylenedioxymethamphetamine, a Schedule I

controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

    Title 21, United States Code, Section 959; Title 18, United States Code, Sections 2.

## COUNT FOUR

11.  In or about, and between, April 1, 2002, and May 3, 2002, in the Dominican Republic, the Netherlands and elsewhere, the defendants **BJC**, **JOHN DOE**, a/k/a M, and **JOSE LUIS SEVERINO-CONCEPCION** did unlawfully, knowingly, and intentionally distribute and cause the distribution of a mixture or substance containing a detectable amount of 3,4-Methylenedioxymethamphetamine, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

    Title 21, United States Code, Section 959; Title 18, United States Code, Section 2.

## COUNT FIVE

12.  In or about, and between, May 1, 2002, and May 31, 2002, in the Dominican Republic, the Netherlands and elsewhere, the defendant **JSR**, did unlawfully, knowingly, and intentionally distribute and cause the distribution of a mixture or substance containing a detectable amount of 3,4- Methylenedioxymethamphetamine, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

    Title 21, United States Code, Section 959; Title 18, United States Code, Section 2.

**COUNT SIX**

13. In or about, and between, July 1, 2002, and July 28, 2002, in the Dominican Republic, the Netherlands and elsewhere, the defendants **BJC**, **JOHN DOE**, a/k/a M, and **JOSE LUIS SEVERINO-CONCEPCION** did unlawfully, knowingly, and intentionally distribute and cause the distribution of a mixture or substance containing a detectable amount of 3,4-Methylenedioxymethamphetamine, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959 and 960.

Title 21, United States Code, Section 959; Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATION**

14. The violations alleged in Counts One through Seven are realleged and incorporated by reference herein. As a result of the offenses alleged in Counts One through Six, the defendants named therein shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all respective right, title or interest which such defendants may have in (1) any and all money and/or property constituting, or derived from, any proceeds which such defendants obtained, directly or indirectly, as the result of the violations alleged in Counts One through Six of this Information; and (2) any and all property used, in any manner or part, to commit, or to facilitate the commission of, the violations alleged in Counts One through Six of

this Information.  If any of said forfeitable property, as a result of any act or omission of the defendants –

       (a) cannot be located upon the exercise of due diligence;
       (b) has been transferred or sold to, or deposited with, a third party;
       (c)  has been placed beyond the jurisdiction of the Court;
       (d) has been substantially diminished in value; or
       (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the said property.

      Criminal Forfeiture in violation of Title 21, United States Code, Sections 853 and 970.

                                      Kenneth A. Blanco, Chief
                                      Narcotic and Dangerous Drug Section
                                      Criminal Division
                                      U.S. Department of Justice

BY:     /s/
              John M. Gillies
              Trial Attorney